UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JINGYUAN YANG and YAN LI,
individually and as parents and natural
guardians of S.Y., an infant,

                              Plaintiffs,

            – v –

UNITED STATES OF AMERICA,

                              Defendant.

21 Civ. 6563 (SDA)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
UNITED STATES OF AMERICA'S MOTION TO EXCLUDE THE TESTIMONY OF
PLAINTIFFS' EXPERTS DR. RICHARD LUCIANI AND DR. DANIEL ADLER,
AND FOR SUMMARY JUDGMENT**

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
*Counsel for Defendant*
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2721/2677

Of Counsel:

TOMOKO ONOZAWA
SAMUEL DOLINGER
Assistant United States Attorneys

## TABLE OF CONTENTS

ARGUMENT ................................................................................................................. 1

I.    The Court Should Exclude the Unreliable Testimony of Dr. Luciani and Dr. Adler ... 1

    A.    Dr. Luciani's Opinions on the Standard of Care Do Not Cure the Deficiencies in His Causation Opinions ................................................................. 1

    B.    Dr. Luciani's Causation Opinions Lack a Reliable Foundation in Record Evidence ......................................................................................................... 2

    C.    Dr. Luciani's and Dr. Adler's "Differential Diagnoses" Do Not Remedy the Fundamental Deficiencies in Their Causation Opinions ................................. 5

    D.    Dr. Adler's Causation Opinions Lack a Reliable Foundation in Record Evidence ......................................................................................................... 7

    E.    Dr. Adler Is Not Qualified to Testify About S.Y.'s Future Needs and Employment Prospects .................................................................................. 8

II.    The Court Should Grant the Government's Motion for Summary Judgment ............ 10

CONCLUSION ............................................................................................................ 11

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. Prospect Hospital*,
    501 N.E.2d 572 (N.Y. 1986)..................................................................... 10

*Arkin v. Gittleson*,
    32 F.3d 658 (2d Cir. 1994)......................................................................... 2

*Baker v. Dalkon Shield Claimants Trust*,
    156 F.3d 248 (1st Cir. 1998)...................................................................... 6

*Cornell v. 360 West 51st Street Realty, LLC*,
    9 N.E.3d 884 (N.Y. 2014)........................................................................... 7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)........................................................................... passim

*Diawara v. United States*,
    No. 18 Civ. 3520, 2020 WL 1151162 (E.D. Pa. Mar. 9, 2020) .................. 8

*Fung-Schwartz v. Cerner Corp.*,
    17 Civ. 233 (VSB), 2020 WL 8771329 (S.D.N.Y. Nov. 16, 2020)............. 9

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994)......................................................................... 6

*Kannankeril v. Terminix Int'l, Inc.*,
    128 F.3d 802 (3d Cir. 1997)....................................................................... 6

*LaBauve v. Louisiana Medical Mutual Ins. Co.*,
    318 So.3d 983 (La. Ct. App. 3d Cir. 2021)................................................ 4

*L.S. by Oliveria v. United States*,
    No. 16 Civ. 8763 (PMH), 2020 WL 13566228 (S.D.N.Y. Oct. 30. 2020) ............... 9

*McCullock v. H.B. Fuller Co.*,
    61 F.3d 1038 (2d Cir. 1995)....................................................................... 6

*Potter v. United States*,
    No. 17 Civ. 4141 (AJN), 2020 WL 2836440 n.2 (S.D.N.Y. May 30, 2020)....................... 6, 10

*Ruggiero v. Warner-Lambert Co.*,
    424 F.3d 249 (2d Cir. 2005)............................................................................................ 7

*U.G. by Nanema v. United States*,
    No. 21 Civ. 2615 (VEC), 2022 WL 7426212 (S.D.N.Y. Oct. 13, 2022).................................... 7

*Westberry v. Gislaved Gummi AB*,
    178 F.3d 257 (4th Cir. 1999) ........................................................................................ 6

*Winegrad v. New York Univ. Med. Ctr.*,
    476 N.E.2d 642 (N.Y. 1985)........................................................................................ 10

**Rules**

Fed. R. Civ. P. 26(a)(2)............................................................................................ 9

Fed. R. Civ. P. 56 .................................................................................................... 1

Federal Rule of Evidence 702................................................................................ passim

Defendant the United States of America (the "United States" or the "Government"), by its attorney, Damian Williams, United States Attorney for the Southern District of New York, respectfully submits this reply memorandum of law in further support of its motion to exclude the expert testimony of Plaintiffs' experts Dr. Richard Luciani and Dr. Daniel Adler pursuant to Rule 702 of the Federal Rules of Evidence, and for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## ARGUMENT

### I.    The Court Should Exclude the Unreliable Testimony of Dr. Luciani and Dr. Adler

The Court should preclude the opinion testimony of Dr. Luciani and Dr. Adler because Plaintiffs have not demonstrated that their experts' causation opinions meet the standards for admissibility.  Dr. Adler is also not qualified to offer opinions about infant plaintiff S.Y.'s future educational needs, employment opportunities, and the need for living support.

> A.    Dr. Luciani's Opinions on the Standard of Care Do Not Cure the Deficiencies in His Causation Opinions

Plaintiffs attempt to rebut the Government's challenge to Dr. Luciani's causation opinions by arguing that the Government has not attacked his "opinions regarding departures from the standard of care by Dr. Bui, namely the failure to use the 'push up' or 'pull up' methods" of delivering S.Y. by caesarean section.  *See* Pls.' Mem. of Law in Opp. to Def. USA's Mot. to Exclude Expert Testimony and for Summ. J. ("Pls.' Br.") at 1–2 (ECF No. 101).  *See also* Pls.' Br. at 3–4, 5–6, 9 ("Dr. Luciani sets forth the specific standard of care applicable to dis-impaction of a fetus that is deep in the pelvis and requires delivery by C-section.").  But this argument fails to address the deficiencies in Dr. Luciani's causation opinions.

Under New York law, "a plaintiff must prove (1) that the defendant breached the standard of care in the community, and (2) that the breach proximately caused the plaintiff's

injuries." *Arkin v. Gittleson*, 32 F.3d 658, 664 (2d Cir. 1994) (citing New York cases).  Dr. Luciani's opinions regarding the second element of Plaintiffs' medical malpractice claim—*i.e.,* that Dr. Bui's alleged departures from the standards of care recommended by Dr. Luciani proximately caused S.Y. to suffer a brachial plexus injury which, in turn, caused other medical complications—must be excluded because they lack a sufficiently reliable foundation under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  *See generally* Mem. of Law in Support of the United States of America's Mot. to Exclude the Testimony of Pls.' Experts Dr. Richard Luciani and Dr. Daniel Adler, and for Summ. J. ("Govt. Br.") at 1, 9–21 (ECF No. 90).[1]  Despite Plaintiffs' conclusory claim "that Dr. Bui manually flexed the fetal head in a variety of non-standard ways for approximately a minute" as being "proof positive of an intervention that bears directly upon the causation of the infant plaintiff's injuries," Pls.' Br. at 3, Dr. Luciani's expert report and deposition testimony did not identify any medical records or testimony showing that Dr. Bui applied lateral traction that was "excessive" enough to cause S.Y.'s alleged injury.  Accordingly, his expert opinion on causation should be excluded as unreliable.

      B.      Dr. Luciani's Causation Opinions Lack a Reliable Foundation in Record Evidence

      Dr. Luciani's failure to reconcile his own theory of the mechanism of a brachial plexus and phrenic nerve injury with the facts in the record is a separate ground for excluding his causation opinions.  The deposition testimony of medical personnel who were present at S.Y.'s delivery does not support Dr. Luciani's conclusion that Dr. Bui applied excessive lateral force.

---

[1] Plaintiffs also erroneously assert that Dr. Luciani's opinion that Dr. Bui's purported failure to employ his preferred "push-up" or "pull-up" methods is "uncontradicted evidence" that she "markedly increased the risk of traction injury to the infant." Pls.' Br. at 16.  As stated in the Government's opening brief, the Government's experts have proffered opinions which rebut the substance of Plaintiffs' experts' opinions, including whether the standard of care was breached and whether Dr. Bui's actions caused S.Y. to suffer injury.  *See* Govt. Br. at 9, n.3.

*See* Govt. Br. at 12 (citing deposition testimony).[2]  As Plaintiffs concede, the other providers present at S.Y.'s delivery "remembered nothing specific about the delivery from which any inference can be drawn."  Pls.' Br. at 18–20.

Instead, Plaintiffs have focused on Dr. Bui's deposition testimony, and assert in conclusory fashion that Dr. Bui's description of plaintiff Yan Li's uterine cavity being "very tight," and how Dr. Bui managed to fit only one hand in Li's "very tight" uterine cavity, Pls.' Br. at 5 (citing Ex. C (Bui Tr.) at 42:25–43:3),[3] somehow "corroborates Dr. Luciani's testimony that significant lateral force would be required to extricate the baby's head utilizing one hand."  Pls.' Br. at 5.  Yet Dr. Luciani's expert report and deposition testimony did not "corroborate," let alone attempt to explain, how a "very tight" uterine cavity in which only one of Dr. Bui's hands could fit, Ex. C (Bui Tr.) 42:25–43:3, proves that Dr. Bui applied "upwards to 40 to 80 pound[s] of pull" on S.Y. and caused S.Y.'s head to move laterally in a way that "increase[d] the angle on the opposite side."  Ex. S (Luciani Tr.) 104:5–11,105:5–106:7; 106:9–107:5.  When Dr. Luciani was asked at his deposition to identify the portions of Dr. Bui's deposition transcript which supported his causation opinion, Dr. Luciani referred to Dr. Bui's transcript as a whole and said, "you will understand that," and "it's quite obvious to me that the doctor was hedging around the answer."  *Id.* at 107:22–108:2, 109:7–17.  When asked which portions of Dr. Bui's deposition testimony supported his opinion that the fetal neck was moved away from the infant's axial plane, Dr. Luciani replied that his opinion was not based "in the deposition testimony itself."

---

[2] Plaintiffs claim that the deposition testimony of Certified Nurse Midwife Yuhan Kim ("CNM Kim") and Certified Nurse Midwife Pearl Tung ("CNM Tung") is "meaningless since none of them were in the operating room at the time of delivery."  Pls.' Br. at 20.  However, the Government cited portions of CNM Kim and CNM Tung's deposition transcripts solely to provide background information about the events leading up to plaintiff Yan Li's delivery of S.Y.  *See* Govt. Br. at 2–3.

[3] Unless otherwise noted, all references to "Ex." Refer to the exhibits to the Declaration of Tomoko Onozawa, dated Mar. 15, 2024 (ECF No. 92).

*See* Declaration of Jonathan C. Reiter, dated June 27, 2024 ("Reiter Decl."), Ex. 1 (Luciani Tr.) at 74:19–75:2 (ECF No. 99–1).

Plaintiffs overstate the Government's reference to Dr. Bui's testimony that she used a "normal amount of force" when delivering S.Y., *see* Ex. C (Bui Tr.) at 44:7, and assert that the Government's motion rests on the premise that "a confession of negligence by the defendant is necessary to establish a *prima facie* case of malpractice." Pls.' Br. at 20, 22. This misstates the Government's argument. The Government has shown that the factual record as a whole—which includes, but is not limited to, Dr. Bui's deposition testimony about the level of force she applied—does not support Dr. Luciani's opinion that Dr. Bui applied significant force during the delivery. Govt. Br. at 11–12, 14–16. Moreover, as the Government pointed out, Dr. Luciani rejected Bui's testimony about the "normal amount of force" she used as a "subjective and self-serving assessment" that was "clearly erroneous." Ex. Q (Luciani Report), at 20; *see id.* Ex. S (Luciani Tr.) 109:7–17. However, an expert's opinion cannot rely on his own subjective assessments of a fact witness's credibility. *See* Govt. Br. at 15–16 (citing cases).

In addition, Plaintiffs cite *LaBauve v. Louisiana Medical Mutual Ins. Co.*, 318 So.3d 983 (La. Ct. App. 3d Cir. 2021), *aff'd in part, vacated in part, rev'd in part*, 347 So. 3d 724 (La. 2022), to claim that "[d]efendant doctors in all types of cases typically claim they did everything correctly, but this does not preclude the plaintiff from establishing circumstantially that there were departures from the standard of care . . . ." Pls.' Br. at 20–22. The facts of *LaBauve*, however, underscore the extent to which Dr. Luciani's causation opinions in this case rely heavily on speculation and conjecture, rather than record evidence. In *LaBauve*, the parties agreed that: the defendant OB/GYN used forceps to deliver the infant plaintiff, 318 So.3d at 988; during delivery, three nerves from the infant's cervical spine to her arm "were pulled completely

4

from the spine," and two other nerves at the thoracic spine levels were "partially pulled from her spine" *id.* at 987; and the injury led to the permanent loss of use in the infant's arm. *Id.* at 987, 989. The appellate court reversed the trial court's decision to exclude the infant's treating orthopedic surgeon from opining that the OB/GYN's use of force during delivery caused the infant's injuries, because the treating surgeon "specifically observed" and operated on the infant's torn nerves, among other things. *Id.* at 989–90. Despite the difficulty of obtaining "an accurate self-assessment of the amount of force applied when one is asked to estimate it after the fact," the appellate court held it was clear from the record that "the extent and severity of [the infant's] injury that a great amount of force was applied and that it was applied in a direction that caused the stretching and tearing of [the infant's] brachial plexus nerves." *Id.* at 998. In contrast, there is no evidence in this record that Dr. Bui applied significant force analogous to using forceps, as in *LaBauve*. And unlike the record in *LaBauve*, this record shows that for the past several years, S.Y.'s treating doctors at different institutions have attempted to determine the cause of S.Y.'s current condition but have not made a specific diagnosis. *See* Govt. Br. at 6–7.

      C.      **Dr. Luciani's and Dr. Adler's "Differential Diagnoses" Do Not Remedy the Fundamental Deficiencies in Their Causation Opinions**

Plaintiffs argue that Dr. Luciani and Dr. Adler should be permitted to testify that Dr. Bui used excessive lateral traction and caused S.Y.'s injury, because they "applied the methodology of differential diagnosis by considering and ruling out potential causes other than physician-applied traction." Pls.' Br. at 15–17. The experts' use of a "differential diagnosis" process, however, does not compensate for their conclusory and unsupported opinions that Dr. Bui's actions during the delivery caused S.Y. to suffer injury to his brachial plexus and phrenic nerve.

First, Plaintiffs posit that they must show both "general causation" and "specific causation" to establish that Dr. Bui's actions during the delivery caused S.Y.'s injury—*i.e.,*

whether physician-applied traction during delivery can potentially cause a brachial plexus injury (general causation), and whether Dr. Bui's actions during delivery were "more likely than not the cause of the injury" (specific causation).  Pls.' Br. at 15.  This argument, however, relates to the *proof* that Plaintiffs must establish to prevail on their medical malpractice claim, and has no bearing on the sufficiency of Plaintiffs' experts' causation opinions and whether those opinions constitute admissible proof.  Moreover, the concepts of "general" and "specific" causation, *see* Pls.' Br. at 14–16, belong to an evidentiary framework applicable to toxic tort or products liability cases, not medical malpractice cases.  *See McCullock v. H.B. Fuller Co.*, 61 F.3d 1038 (2d Cir. 1995) (products liability case); *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260–65 (4th Cir. 1999) (products liability case); *Baker v. Dalkon Shield Claimants Trust*, 156 F.3d 248, 252–53 (1st Cir. 1998) (products liability case); *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 807 (3d Cir. 1997) (toxic tort case); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 758 (3d Cir. 1994) (consolidated toxic tort cases).  As recognized by this Court, "a review of New York medical malpractice case law reveals few cases in which such proof was required, and the Court is aware of few cases in this Circuit in which a court has required a plaintiff to separately establish general and specific causation in a medical malpractice action brought under New York law."  *Potter v. United States*, No. 17 Civ. 4141 (AJN), 2020 WL 2836440, at \*4 n.2 (S.D.N.Y. May 30, 2020) (citing cases).  Instead, "[t]o establish causation in a medical malpractice action, 'plaintiff must demonstrate that the defendant's deviation from the standard of care was a *substantial factor* in bringing about the injury.'"  *Id.* at \*4 (citations omitted) (emphasis in original).

Even if Plaintiffs must separately prove general and specific causation to prevail in this case, Dr. Luciani's and Dr. Adler's use of differential diagnoses does not mean their speculative

and conclusory causation opinions are admissible under Rule 702 and *Daubert*. "Differential diagnosis is a generally accepted methodology by which a physician considers the known possible causes of a patient's symptoms, then, by utilizing diagnostic tests, eliminates causes from the list until the most likely cause remains." *Cornell v. 360 West 51st Street Realty, LLC*, 9 N.E.3d 884, 900 (N.Y. 2014). However, "[w]here an expert employs differential diagnosis to rule out other potential causes for the injury at issue, *he must also rule in the suspected cause, and do so using scientifically valid methodology*." *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 254 (2d Cir. 2005) (internal quotation marks and citation omitted) (emphasis added). While Plaintiffs insist both experts "rul[ed] in the physician applied traction documented in Dr. Bui's testimony," Pls.' Br. at 16, both experts' opinions lack the requisite foundation in the records and testimony that Dr. Bui even used "physician applied traction" sufficient to cause injury. Their opinions must therefore be excluded. *See U.G. by Nanema v. United States*, No. 21 Civ. 2615 (VEC), 2022 WL 7426212, at *5 (S.D.N.Y. Oct. 13, 2022) ("Plaintiffs' experts' assertions that they ruled out a third potential cause of injury does not make their *ipse dixit* opinions admissible").

      D.      Dr. Adler's Causation Opinions Lack a Reliable Foundation in Record Evidence

This Court should exclude Dr. Adler's conclusory and unsupported opinions that Dr. Bui's actions during delivery caused S.Y. to suffer injuries to his brachial plexus and phrenic nerve which, in turn, led to hypoxic-ischemic encephalopathy and other complications, for the same reasons that Dr. Luciani's causation opinions lack foundation. *Supra* at 2–3; *see also* Govt. Br. at 17–21. As Plaintiffs note, Dr. Adler repeatedly asserted at his deposition that he was not rendering an "obstetrical opinion" and declined to answer questions about his understanding of the manner in which Dr. Bui moved S.Y.'s head, the facts in the record that demonstrated the extent to which Dr. Bui moved S.Y.'s head, and how Dr. Bui moved S.Y.'s head in a way that

stretched his nerves far enough to purportedly tear them.  Pls.' Br. at 13–14 (citing Reiter Decl. Ex. 2 (Adler Tr.) at 132:12–133:9, 134:14–135:8).  As a pediatric neurologist, Dr. Adler is not qualified to opine on the standards of care that OB-GYNs must follow, but Plaintiffs have proffered him as an expert whose "opinions solely concern the mechanism of the injury and the timing of the injury, both of which are subjects upon which he is eminently qualified to testify." Pls.' Br. at 15.  *See also* Reiter Decl. Ex. 2 (Adler Tr.) at 38:7–9 ("I'm a pediatric neurologist. Just like in the case of S.Y., I offer . . . causation testimony.").  Accordingly, if Dr. Adler was "eminently qualified to testify" about causation and was retained to opine on causation, Dr. Adler was required to, but failed to explain the factual basis for his causation opinions.  Dr. Adler's inability to square his causation opinions with the facts in the record, and his inability to explain this deviation, render his causation opinions inadmissible.

      E.      **Dr. Adler Is Not Qualified to Testify About S.Y.'s Future Needs and Employment Prospects**

Dr. Adler's opinions relating to S.Y.'s needs for educational support, alleged diminished employment prospects, and alleged inability to live independently are outside the scope of his expertise as a pediatric neurologist, and his acknowledgment that he lacks licensing, formal training, and professional certifications in these areas makes those opinions inadmissible.  Govt. Br. at 21–22.  Plaintiffs claim, without any citation to relevant authority, that "the knowledge and experience of a pediatric neurologist is so 'closely related' to" education, employability, and independent living "that his qualifications should be deemed sufficient to permit these opinions." Pls.' Br. at 25.  Other courts, however, have disagreed that having expertise in one field is a sufficient qualification to serve as an expert in other fields.  *See, e.g., Diawara v. United States*, No. 18 Civ. 3520, 2020 WL 1151162, at *7–8 (E.D. Pa. Mar. 9, 2020) (neurologist who treated plaintiff was "qualified to provide expert testimony related to her neurological treatment,

neurological injuries, and any ways in which those neurological injuries cause her various limitations" but "neither [the expert's] experience nor his opinion . . . demonstrate that he is qualified to offer an opinion on how those neurological symptoms or limitations impact her employability.  Those opinions . . . should be left to . . . a vocational expert").  There is also no distinction between this case and *L.S. by Oliveria v. United States*, No. 16 Civ. 8763 (PMH), 2020 WL 13566228, at *2 (S.D.N.Y. Oct. 30. 2020), where this Court precluded Dr. Adler from offering the *same* expert opinions due to the *same* lack of qualifications in an infant medical malpractice case.

Even if this Court were to find that Dr. Adler is qualified to opine on S.Y.'s educational needs, diminished employment prospects, and inability to live independently in the future— which he is not—those opinions must be excluded because his expert report fails to "provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinions . . . [and] explain factually why and how the witness has reached them," as required by Fed. R. Civ. P. 26(a)(2)'s disclosure requirements.  *Fung-Schwartz v. Cerner Corp.*, 17 Civ. 233 (VSB), 2020 WL 8771329, at *2 (S.D.N.Y. Nov. 16, 2020) (citation omitted).  Those opinions must also be excluded as unreliable under Rule 702 and *Daubert*, as Dr. Adler failed to articulate the data and methodology that he used to arrive at those opinions.  *See Daubert*, 509 U.S. at 593–94.[4]

---

[4] Plaintiffs submitted a declaration from Dr. Adler that attempts to bolster his qualifications to opine on S.Y.'s future needs for educational support, future capacity to be employed, and his future inability to live independently (ECF No. 100).  Dr. Adler's declaration speaks generally to his experience "offering opinions" on learning disabilities and educational accommodations, asserts he has provided "innumerable" opinions to unnamed courts about disabled individuals' living needs, and claims in conclusory fashion that his opinion about S.Y.'s future employability was "well within [his] expertise and experience as a pediatric neurologist" who examined S.Y. when he was 3 years old.  *Id.* at 2–3.  Dr. Adler's declaration attaches an excerpt from a pediatric neurology treatise that broadly discusses the needs of developmentally delayed or intellectually disabled children, and the importance of family support and involvement, resources, and early intervention in addressing those needs.  (ECF No. 99–6).  Plaintiffs' submissions do not overcome both Dr. Adler's lack of training, licensing, and professional certifications in these areas, and his own admissions that he is not a vocational expert, an economist, or a life care expert.  Govt. Br. at 21–22.  Nor do these submissions demonstrate that Dr. Adler's opinions are based on sufficient facts or data, and are grounded in any reliable methodology.

**II.    The Court Should Grant the Government's Motion for Summary Judgment**

This Court should grant summary judgment in favor of the Government because Plaintiffs have failed to adduce admissible expert testimony that Dr. Bui's actions during S.Y.'s delivery proximately caused his injury.  Plaintiffs argue that the Government is not entitled to summary judgment because the Government "has not even attempted to prove the absence of negligence, and accordingly has not made out a *prima facie* case entitling it to summary judgment."  Pls.' Br. at 24.  These contentions are wrong.

The Government is not moving for summary judgment on the ground that the undisputed facts establish a *prima facie* showing that judgment should be entered in its favor.  Accordingly, the cases on which Plaintiffs rely are inapposite.  Pls.' Br. at 24.  *See Alvarez v. Prospect Hospital*, 501 N.E.2d 572, 573–75 (N.Y. 1986) (granting defendant doctor's summary judgment motion in medical malpractice case, where defendant relied on hospital records and deposition testimony, while plaintiff's rebuttal was an attorney affidavit presenting a brand-new theory of liability); *Winegrad v. New York Univ. Med. Ctr.*, 476 N.E.2d 642, 642 (N.Y. 1985) (denying summary judgment to defendant doctors in medical malpractice case, where defendants' motion relied on "bare conclusory assertions" that they "did not deviate from good and accepted medical practices").   Rather, the Government is moving for summary judgment because Dr. Luciani's and Dr. Adler's causation opinions lack a sufficiently reliable basis under Rule 702 and *Daubert*, and absent an admissible expert opinion on causation, Plaintiffs have failed to establish an essential element of their medical malpractice claim.  "Because expert opinion evidence is required to establish the element of causation and Plaintiff has failed to offer any admissible expert evidence on causation, the Government is entitled to summary judgment on Plaintiff's medical malpractice claim."  *Potter*, 2020 WL 2836440, at *8.

**CONCLUSION**

For the reasons stated in this brief and the Government's opening brief (Dkt. No. 90), the

Court should grant the Government's motion for an order (i) excluding the expert opinions of Dr.

Luciani and Dr. Adler, and (ii) granting summary judgment in favor of the United States.

Dated:  August 9, 2024
        New York, New York

                                              Respectfully submitted,

                                              DAMIAN WILLIAMS
                                              United States Attorney for the
                                              Southern District of New York

                                   By:    */s/ Tomoko Onozawa*
                                          TOMOKO ONOZAWA
                                          SAMUEL DOLINGER
                                          Assistant United States Attorneys
                                          86 Chambers Street, Third Floor
                                          New York, New York 10007
                                          Telephone: (212) 637-2721/2677
                                          tomoko.onozawa@usdoj.gov
                                          samuel.dolinger@usdoj.gov